UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EARL FARMER,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>C.L. "BUTCH" OTTER; RANDY BLADES; MS. WAMBLE-FISHER; CATHY STEFFEN; CORIZON MEDICAL SERVICES; IDAHO STATE DEPARTMENT OF CORRECTION; and IDAHO STATE BOARD OF CORRECTION,<br><br>　　　Defendants. | Case No. 1:14-cv-00345-BLW<br><br>MEMORANDUM DECISION AND ORDER |

Pending before the Court are" (1) Defendant Corizon, LLLC's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Dkt. 18);(2) Defendants Randy Blades and Shell Wamble-Fisher's Motion for Summary Judgment (Dkt. 30); (3) Plaintiff Earl Farmer's Motion to Reconsider Order of March 13, 2015 re 22 Order on Motion for Protective Order, Order on Motion to Stay and Objection to Order of March 13, 2015 (Dkt. 24); and (4) Plaintiff Earl Farmer's Motion to Compel Discovery (Dkt. 25).

**MEMORANDUM DECISION AND ORDER- 1**

Having fully reviewed the record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, the Court will decide this matter on the written motions, briefs and record without oral argument. D. Idaho L. Civ. R. 7.1(d). For the reasons set forth below, the Court will grant the Defendants' motions for summary judgment and find moot Farmer's motions.

## BACKGROUND

### 1. Introduction

Plaintiff Earl Farmer is a prisoner in the custody of the Idaho Department of Correction (IDOC), currently incarcerated at Idaho State Correctional Institution (ISCI). On August 21, 2014, Farmer filed his Complaint against several defendants, including Corizon, LLC (misnamed Corizon Medical Services), Shell Wamble-Fisher, and Randy Blades, alleging that Defendants failed to protect him from physical and sexual assault by other inmates and were deliberately indifferent to his mental health. *Compl.*, Dkt. 3. Farmer asserted civil rights claims under § 1983, as well as unidentified state law claims.

On November 5, 2014, the Court issued an Initial Review Order dismissing several defendants and all but one claim: an Eight Amendment cruel and unusual punishment claim for deliberate indifference to Farmer's mental health care needs against Defendants Blades, Wamble-Fisher, and Corizon. *Initial Review Order*, Dkt. 7. The Court summarized Farmer's only remaining claim as follows:

> Plaintiff asserts that IDOC policy allows only 6 mental health counseling sessions, regardless of the individual prisoner's mental health needs. He

MEMORANDUM DECISION AND ORDER- 2

>also alleges that he requested more sessions from Defendants Blade and Wamble-Fisher, as well as from individual medical providers employed by Corizon, Inc., the private entity that provides medical treatment to the inmates; however, he was not allowed any more than the 6 sessions provided by policy.

*Id.* at 9.

Specifically, Farmer alleges that Defendants were deliberately indifferent to his mental health when it did not follow the standards as provided for in Corizon's contract with the IDOC. *Compl.*, p. 6, Dkt. 3. He alleges that he requested to have mental health counseling, but his request was refused due to budgetary concerns. *Id.* Farmer further alleges that Defendants did not provide him needed mental health care because it only has one psychologist and no psychiatrist on staff. *Id.* at 6-7. In addition, Farmer alleges that his mental health issues have not been properly diagnosed by a competent licensed mental health professional, and that he has not been placed on a mental health program or pathway that fits his needs. *Id.* at 7. Because, he received inadequate medical care, Farmer claims he was placed in a living environment where he was physically attacked by another inmate in January 2014. *Id.*

Defendant Corizon and Defendants Blades and Wamble-Fisher have filed separate motions for summary judgment. Corizon argues that Farmer's Complaint should be dismissed because he failed to exhaust administrative remedies within the prison system for the allegations in this Complaint. Blades and Wamble-Fisher argue the merits of the claim—that Farmer was and is being provided appropriate mental health services.

**MEMORANDUM DECISION AND ORDER- 3**

## ANALYSIS

1. **Corizon's Motion for Summary Judgment for Failure to Exhaust**

    A. *Exhaustion Requirements*

The Prison Litigation Reform Act of 1995 ("PLRA")[1] requires a prisoner to exhaust all available administrative remedies within the prison system before he can include the claims in a new or ongoing civil rights lawsuit challenging the conditions of confinement. 42 U.S.C. § 1997e(a); *Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (a claim may be exhausted prior to filing suit or during suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

**MEMORANDUM DECISION AND ORDER- 4**

generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

Confusing or contradictory information given to a prisoner is relevant to the question "of whether relief was, as a practical matter, 'available.'" *Brown*, 422 F.3d at 937. Administrative remedies will be deemed unavailable and exhaustion excused if the inmate had no way of knowing the prison's grievance procedure, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," or if prison staff took any other similar actions that interfered with an inmate's efforts to exhaust. *Albino*, 747 F.3d at 1173.

Rule 56 of the Federal Rules of Civil Procedure prohibits the courts from resolving genuine disputes as to material facts on summary judgment. If a genuine dispute exists as to material facts relating to an exhaustion defense, the motion should be denied, and the "disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Albino*, 747 F.3d at 1170-71. *See Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) (the court has the discretion to take evidence at a preliminary hearing to resolve any questions of credibility or fact and that the plaintiff must establish the facts by a preponderance of the evidence, just as he would have to do at trial).

**MEMORANDUM DECISION AND ORDER- 5**

If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F.3d 1162.

**B.** *Grievance Procedure*

Idaho has adopted a grievance procedure for inmates in its custody. *Whittington Aff.* ¶ 3, Dkt. 18-3. The IDOC grievance procedure consists of a three-step process: (1) the inmate seeks an informal resolution of the matter by completing an Offender Concern Form; (2) the inmate completes a Grievance Form if informal resolution cannot be accomplished; and (3) the inmate appeals any unfavorable response to the grievance. *Id.* ¶¶ 5-8. Once all three steps are completed, the offender grievance process is exhausted. *Id.* ¶ 9.

As an inmate incarcerated by the Idaho Department of Corrections, the Offender Grievance Process has been available to Famer. *Id.* ¶ 4; *Grievance and Informal Resolution Procedure for Offenders*, Dkt. 18-4. Farmer fully exhausted two grievances by completing all three steps: Grievance II 130001139 and Grievance II 140001240. *Whitting Aff.* ¶ 11. Grievance II 130001139 concerned the Prison Rape Elimination Act. *Id.* ¶ 13. In Grievance II 140001240, Farmer complained on November 17, 2014, after this suit was filed, that the IDOC and Corizon refused to provide him a parole plan for mental health aftercare (after his release) due to cost. *Id.* ¶ 14. In particular, he wanted the IDOC and Corizon to provide him mental health assistance after his release. *Id.* Farmer also filed a third grievance, which he apparently did not fully complete: Grievance II

**MEMORANDUM DECISION AND ORDER- 6**

130001073. In this last Grievance, Farmer requested counseling or therapy from an outside specialist, but that grievance did not allege that he was denied adequate mental health care due to cost. *Id.* ¶ 12. Farmer concedes that he received six additional counseling sessions as a result of the grievance. *Id.*; *Compl.* at 15, Dkt. 3.

Corizon now moves for summary judgment on the grounds that Farmer has failed to exhaust his administrative remedies because none of the grievances Farmer submitted raised the issues contained in the Complaint.

### C. *Farmer's Failure to Exhaust Administrative Remedies*

The record demonstrates that Farmer did not exhaust his administrative remedies through the grievance process any of the allegation raised in his Complaint. In his Complaint, Farmer alleges that Corizon was deliberately indifferent to his mental health when it did not follow the standards as provided for in Corizon's contract with the IDOC. *Compl.*, p. 6, Dkt. 3. He alleges that he requested to have mental health counseling, but his request was refused due to budgetary concerns. *Id.* Farmer further alleges that Corizon does not provide him needed mental health care because it only has one psychologist and no psychiatrist on staff. *Id.* at 6-7. In addition, Farmer alleges that his mental health issues have not been properly diagnosed by a competent licensed mental health professional, and that he has not been placed on a mental health program or pathway that fits his needs. *Id.* at 7. Because he allegedly received inadequate medical care, Farmer claims, he was placed in a living environment where he was physically attacked by another inmate in January 2014. *Id.*

**MEMORANDUM DECISION AND ORDER- 7**

Yet, Farmer never filed a grievance alleging that: (1) Corizon did not follow the mental health standards as provided for in its contract with the IDOC; (2) his mental health care was inadequate due to staffing; (3) his mental health issues have not been properly diagnosed by a competent mental health professional; (4) he has not been placed on a mental health program or pathway that fits his needs; and (5) due to inadequate mental health care, he was placed in a living environment where he was physically assaulted by another inmate in January 2014. *Whittington Aff*. ¶ 15. Because Farmer did not raise any of these specific issues contained in his Complaint in a grievance, the claims in his Complaint are unexhausted and must be dismissed. *Woodford*, 548 U.S. at 85.

Farmer, however, argues that (1) Grievance II-130001073 includes the issues in the Complaint; (2) Grievance II-140001240 is "a continuation" of Grievance II-130001073; (3) Defendant Shell Wamble-Fisher did not allow his Concern Forms or Grievances to be processed between January 2013 and late 2014; and (4) Prison Rape Elimination Act ("PREA") claims do not need to be addressed through the grievance process. *Pl.'s Resp.*, Dkt. 21. The Court disagrees with each of these arguments and will address each in turn.

First, Grievance II-130001073, filed September 9, 2013, does not address the issues raised in the Complaint. Rather, with this grievance, Farmer requested counseling from an outside specialist. This grievance was granted at the Level II response, and Farmer received six outside counseling sessions. But Farmer's contends in his Complaint that he was denied counseling sessions beyond the six sessions provided in response to

**MEMORANDUM DECISION AND ORDER- 8**

this Grievance. In other words, this Grievance 1240 did not raise the same issues as those raised in the Complaint..

Second, Grievance 1240 is not a continuation of Grievance II-130001073, as Farmer contends. In Grievance 1073, Farmer complained that the IDOC and Corizon refused to provide him a plan for mental health care *after* his release from prison because of cost. Whether additional care should have been provided *while* Farmer remained in prison, which is what Farmer contends in his Complaint, is an entirely different issue from whether Farmer should receive care *after* his release, while he is on parole. Moreover, the Idaho Grievance Policy requires that each grievance address only a single issue and there cannot be "continuing" grievances. *Grievance and Informal Resolution Procedure for Offenders*, p. 9, Dkt. 18.

However, even if Grievance 1073 did arguably encompass the allegations in Farmer's Complaint, it was not filed until after the Complaint was filed, and therefore Farmer did not exhaust his administrative remedies prior to initiating this action. *See* 42 U.S.C. § 1997e(a); *see also Hall v. Reinke*, No. 1:13-cv-118-REB, 2014 WL 4793955, at *6 (D. Idaho Sept. 25, 2014) (unpublished) ("A claim may be exhausted prior to filing suit or during suit, *so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit*.") (emphasis added). If Corizon did not know about the specific problem, they could not attempt to remedy it.

Third, there is no evidence that Wamble-Fisher denied Farmer access to the grievance process. The only evidence Farmer provides is a series of documents that

**MEMORANDUM DECISION AND ORDER- 9**

appear to come from an unrelated whistleblower case; Farmer argues that these documents demonstrate Wamble-Fisher's lack of credibility and propensity to alter documents. But these documents do nothing to show that Wamble-Fisher somehow impeded *Farmer's* access to the grievance process. Indeed, the fact that Farmer filed five concern forms and grievances in 2013, and two more in 2014 belies his allegations that Wamble-Fisher prevented him from filing a grievance during this same time frame. Farmer does not explain how he filed these five concern forms or grievance but failed to file a single grievance raising the same concerns raised in his Complaint.

However, even assuming that Farmer's allegations were true, it would not matter because Farmer did not have to go through Wamble-Fisher to file a grievance. The Idaho Grievance Policy makes clear that if a staff member does not respond to an Offender Concern Form within seven days, the inmate can elect to submit another Offender Concern Form to another staff member or use the grievance process. *Grievance and Informal Resolution Procedure for Offenders*, p. 3. Dkt. 18. So, if Wamble-Fisher ignored or impeded Farmer's concern forms or delayed the grievance process as Farmer alleges, he could have simply bypassed that step and filed a grievance in a lockbox that is provided for all inmates to use for confidential offender/grievance/appeal forms. *Id.*, p. 6.

Finally, several problems exist with Farmer's argument that his claim qualifies as a "PREA" claim and thus does not need to be exhausted. Congress enacted the PREA to address the problem of rape in prison by creating national standards to prevent, detect, and respond to prison rape. *See, e.g. Hatcher v. Harrington*, No. 14-00554 JMS/KSC,

**MEMORANDUM DECISION AND ORDER- 10**

2015 WL 474313, at *4 (D. Haw. Feb. 5, 2015). Neither Farmer's deliberate indifference claim at issue here nor any of the grievances he filed in 2013 and 2014 raise concerns about sexual abuse or prison rape (which he contends occurred in 1997); instead, his claims and grievances involve issues with access to mental health counseling. Thus, it is not clear that Farmer's claim would qualify as a PLRA. Indeed, it is questionable that PREA even creates a private cause of action that can be brought by an individual plaintiff. *Hatcher v. Harrington*, No. 14-00554 JMS/KSC, 2015 WL 474313, at *5 (D. Haw. Feb. 5, 2015) (listing cases) ("Nothing in the PREA explicitly or implicitly suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act."). Finally, many courts have held that the PREA's reporting requirements do not supersede the PLRA's exhaustion requirements. *See, e.g., Omaro v. Annucci*, --- F.Supp.3d ---, 2014 WL 6068573, at *4 (W.D.N.Y. Nov. 13, 2014) ("Nothing in the text or legislative history of the PREA suggests that it was intended to abrogate the PLRA's exhaustion requirement."); *Lamb v. Franke*, No. 2:12-cv-367-MO, 2013 WL 638836, at *2 (D.Or. Feb. 14, 2013) (unpublished) ("The PREA does not impose an alternative remedial scheme, nor does it supersede PLRA's exhaustion requirement.").

In sum, Farmer was required to exhaust his administrative remedies before filing suit but failed to so. Accordingly, the Court will grant Corizon's motion for summary judgment.

**MEMORANDUM DECISION AND ORDER- 11**

**2. Blades and Wamble-Fisher's Motion for Summary Judgment**

Blades and Wamble-Fisher move for summary judgment on Farmer's Eighth Amendment claim on the grounds that Farmer was and is being provided appropriate mental health services, and therefore his claims do not have merit.

**A.** *Eighth Amendment*

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, Farmer must show that he is "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of Defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). He must also show that Defendants were deliberately indifferent to his needs. "[D]eliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and [the] subjective standard" of deliberate indifference. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

The Eighth Amendment includes the right to adequate medical care in prison, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs."

**MEMORANDUM DECISION AND ORDER- 12**

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The right to adequate prison health care includes adequate mental health treatment, and the standards are the same whether the treatment is considered physical or mental. *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994).

Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain . . . .

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A prison official or prison medical provider acts with "deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe, Nev.,* 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"

**MEMORANDUM DECISION AND ORDER- 13**

*Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188 (citation omitted). However, "whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003) (deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that defendant actually knew of a risk of harm).

In the medical context, a conclusion that a defendant acted with deliberate indifference requires that the plaintiff show both "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted).

**MEMORANDUM DECISION AND ORDER- 14**

Non-medical prison personnel are generally entitled to rely on the opinions of medical professionals with respect to the medical treatment of an inmate. However, if "a reasonable person would likely determine [the medical treatment] to be inferior," the fact that an official is not medically trained will not shield that official from liability for deliberate indifference. *Snow*, 681 F.3d at 986; *see also McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel may rely on medical opinions of health care professionals unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner") (internal quotation marks omitted).

Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam). A delay in treatment does not constitute a violation of the Eighth Amendment unless the delay causes further harm. *McGuckin*, 974 F.2d at 1060. If

medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

As noted above, Farmer asserts that IDOC policy allows only six mental health counseling sessions, regardless of the individual prisoner's mental health needs. He also alleges that he requested more sessions from Defendants Blades and Wamble-Fisher; however, he was not allowed any more than the six outside sessions provided by policy. *Compl.* at 3-7.

The record, however, shows that Farmer has received more than adequate mental health care treatment. Farmer was committed to the custody of the IDOC in June of 2010. Upon arrival at ISCI, he was assessed at the receiving and diagnostic unit where he completed a medical history questionnaire. He described a prior diagnosis for Post-Traumatic Stress Disorder (PTSD). *Wamble-Fisher Aff.*, Ex. 4 (MEDFILE 334, 228-232), Dkt. 30-5. He was referred to a psychiatrist for medication management and group therapy. *Id.* A treatment plan was created which included medication and therapy prescribed by a psychiatrist. *Id.* (MEDFILE 261-262). Thereafter, he received care from various clinicians and psychiatrists. *Wamble-Fisher Aff.*, ¶¶ 3-11. Exbs. 1-7.

The mental health services he has received have addressed various issues including his PTSD. *Id.,* ¶ 3. During his incarceration, Farmer has, when appropriate, been housed at the Behavioral Health Unit (BHU). The BHU is a medical facility at ISCI

that houses and treats severely mentally ill inmates. *Wamble-Fisher Aff.*, ¶¶ 4-5. Inmates at the BHU are assigned a clinician. The unit is constantly staffed with mental health providers. As a result, inmates living in the BHU have access to and receive daily mental health care and treatment. *Wamble-Fisher Aff.*, ¶ 5.

During Farmer's incarceration at ICIO and ISCI, Farmer has received assessments or treatment 125 times. *Id.* ¶ 8, Exbs. 1, 2, 4 and 5. Farmer's sessions with outside provider, Marcy Dawley, were approved by IDOC Chief Psychologist, Dr. Craig, after Farmer reported a PREA incident that occurred year earlier. *Craig Aff.* ¶ 2-3. After Farmer completed the six-approved sessions, he continued receiving PTSD counseling from Wamble-Fisher, who is the clinical supervisor.

These facts do not amount to an Eighth Amendment violation. Simply because Farmer may have preferred his sessions with Ms. Dawley and wanted them to continue does not mean that his Eighth Amendment rights were violated. In *Roberts v. Spalding*, 783 F.2d 867 (9thCir. 1986), the Court held "a prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution." See 783 F.2d at 870. The undisputed facts establish that Farmer has and is receiving mental health services. That care is being provided by properly licensed and credentialed clinicians within the institution. The mental health treatment he has received from IDOC psychiatrists and clinicians exceed Eighth Amendment minimum standards. Accordingly, Farmer's Eighth Amendment claims against Blades and Wamble-Fisher will be dismissed.

**MEMORANDUM DECISION AND ORDER- 17**

B. *Failure to Exhaust Administrative Remedies*

Alternatively, the Court concludes that summary judgment could be granted in Blades and Wamble-Fisher's favor on the grounds that Farmer failed to exhaust his administrative remedies. Farmer made the same claim against all three defendants—that they restricted his access to mental health counseling services without regard to his mental health needs. As discussed above with respect to Corizon, Farmer failed to exhaust this claim. "[N]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. 199, 220 (2007). Although Blades and Wamble-Fisher did not make this argument themselves, the same reasoning applies to the claim against them, and Farmer had a full opportunity to argue this claim in the context of Corizon's summary-judgment motion.

3. **Farmers' Motions**

Because the Court grants summary judgment in favor of all Defendants, Farmer's motions regarding discovery are moot.

## ORDER

IT IS ORDERED that:

1. Defendant Corizon, LLLC's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Dkt. 18) is GRANTED.

2. Defendants Randy Blades and Shell Wamble-Fisher's Motion for Summary Judgment (Dkt. 30) is GRANTED.

**MEMORANDUM DECISION AND ORDER- 18**

3. Plaintiff Earl Farmer's Motion to Reconsider Order of March 13, 2015 re 22 Order on Motion for Protective Order, Order on Motion to Stay and Objection to Order of March 13, 2015 (Dkt. 24) is MOOT

4. Plaintiff Earl Farmer's Motion to Compel Discovery (Dkt. 25) is MOOT.

DATED: September 22, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court

**MEMORANDUM DECISION AND ORDER- 19**